IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| DARREN HALL, <br> MICHAEL HENNESSY, and <br> And MARK CARTWRIGHT. <br><br> Plaintiffs, <br><br> V. <br><br> THE TONE KNOWS, INC., <br> TONE MULTI-MEDIA LLC, <br> VLAD CHIRIAC, individually, and <br> VALI CHIRIAC, individually, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | No. 3:24-cv-3273-K |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Darren Hall, Michael Hennessy, and Mark Cartwright have filed a Motion for Default Judgment against Defendant The TONE Knows, Inc. ("TK") and Defendant TONE Multi-Media LLC ("TMM") (collectively, "TONE" or "Tone"). *See* Dkt. No. 52.

United States District Judge Ed Kinkeade has referred this motion to the undersigned United States Magistrate Judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 53.

For the following reasons, the Court should deny Plaintiffs' Motion [Dkt. No. 52].

-1-

## Background

This case concerns allegations of breach of contract, fraudulent misrepresentation, negligent misrepresentation, securities fraud under Texas Government Code § 4008.052, and parental negligence.

On the basis of diversity jurisdiction, Plaintiffs filed a complaint in this court on December 31, 2024 against TONE; Defendant Vlad Chiriac, individually; and Defendant Vali Chiriac, individually. *See* Dkt. No. 1. On January 16, 2025, they amended their complaint. *See* Dkt. No. 10. And on March 11, 2025, they filed a Second Amended Complaint. *See* Dkt. No. 33.

Plaintiffs allege that Vlad, who was 17 years old at the time, "with TONE's backing, solicited Plaintiffs while pretending to be an adult with enough cryptocurrency expertise to create and bring a cryptocurrency coin [$TONE] to the market." *Id.* at 1. "Believing in Vlad's and Tone's vision, Plaintiffs invested $80,000." *Id.* Plaintiffs claim that, "six months after being solicited by Vlad and TONE, $TONE coin does not exist," and Vlad and TONE "refuse to return Plaintiffs' investment." *Id.* at 2. And Plaintiffs allege that Vali "failed to prevent Vlad from holding himself out falsely as an adult and cryptocurrency expert … [and] making other false material representations with the intent that Plaintiffs would invest their money." *Id.* at 11.

Plaintiffs' claims against Vlad (securities fraud under Section 4008.052, fraudulent misrepresentation, negligent misrepresentation, and civil conspiracy to commit fraud and securities fraud) and Vali (parental negligence), *see generally id.*, were dismissed with prejudice on April 25, 2025, *see* Dkt. No. 49.

-2-

Their remaining claims against TONE are for breach of contract (or, in the alternative, quantum meruit), fraudulent misrepresentation, and securities fraud under Section 4008.052. *See* Dkt. No. 10.

Summonses were issued as to all Defendants on January 2, 2025. *See* Dkt. No. 5. Plaintiffs properly served process on TK on January 7, 2025. *See* Dkt. No. 7.

On March 13, 2025, summonses were issued again as to TK and TMM. *See* Dkt. No. 40. TK was properly served with Plaintiffs' Amended Complaint and Second Amended Complaint on March 14, 2025. *See* Dkt. No. 41.

The Court granted Plaintiffs leave to effectuate substituted service on TMM through its registered agent, Ryan Carter. *See* Dkt. No. 45. The Court ordered Plaintiffs to file proof of service within 3 days of serving TMM.

On April 8, 2025, Plaintiffs served TMM by posting a copy of the Amended Complaint and Second Amended Complaint on the front door of Ryan Carter's last known abode. *See* Dkt. Nos. 46 & 47. They filed proof of service on April 16, 2025 – 6 business days after serving TMM.

Despite being properly served, TONE failed to file answers or otherwise appear in this case. Plaintiffs then filed a request for entry of default against them. *See* Dkt No. 50.

The Clerk of Court entered default as to TONE on May 5, 2025. *See* Dkt. No. 9.

Plaintiffs then filed this motion for default judgment against TONE. *See* Dkt. No. 52. They seek damages of at least $500,000 for Cartwright; damages of at least $100,000 to each of Hall and Hennessy; pre- and post-judgment interest at the highest

permitted rates; attorneys' fees and court costs; and all other and further relief to which they may be entitled. *See id.* at 1-2.

## Legal Standards

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply

-4-

to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.*

An entry of default "does not establish the amount of damages. After a default

judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

### I.    The procedural requirements for default judgment have been met.

Plaintiffs have satisfied the prerequisites for entry of default judgment against TONE.

"[A] plaintiff seeking default judgment on an amended complaint must first demonstrate proper service of the operative complaint; a party may not avail itself of the more relaxed standard under Rules 5(a)(1)(B) and 5(b) to effect proper service of an amended complaint unless the defendant has appeared in the first instance." *U.S. Bank Nat'l Ass'n v. Harris*, No. 4:16-CV-00498-ALM-CAN, 2018 WL 4677809, at *1 (E.D. Tex. Mar. 14, 2018) (cleaned up).

Plaintiffs served TK with their Second Amended Complaint – the operative complaint – on March 14, 2025 by personally serving its registered agent, Mr.

Webster. *See* Dkt. No. 42.

And they served TMM with their Second Amended Complaint on April 8, 2025 by posting the summons on the front door of its registered agent, Mr. Carter, in compliance with the Court's order allowing substituted service [Dkt. No. 45]. *See* Dkt. No. 47. Although Plaintiffs filed proof of substituted service with the Court 3 days after the deadline, *see* Dkt. No. 45, the undersigned finds that Plaintiffs effectuated "reasonably effective" service using methods that complied with the Court's order. TEX. R. CIV. P. 106(b).

The Clerk of Court entered default against TONE on May 5, 2025. *See* Dkt. No. 9.

TONE are not natural persons, and, so, cannot be minors, incompetent, or in the military service.

And, so, Plaintiffs meet the procedural requirements for entry of default against TONE.

## II. <u>The Court has subject matter jurisdiction but not personal jurisdiction.</u>

### A. Subject Matter Jurisdiction

Plaintiffs have shown the Court has subject matter jurisdiction.

Under Section 1332, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a), (b).

Plaintiffs allege that they are each citizens of Texas. *See* Dkt. No. 33 at 2. And

they allege that Vlad and Vali are citizens of California. *See id.*

For diversity jurisdiction purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

And the citizenship of a limited liability company ("LLC") is determined by the citizenship of each of its members. *See SXSW v. Fed. Ins. Co.*, 83 F.4th 405, 407-08 (5th Cir. 2023).

Plaintiffs allege that TK is incorporated in Nevada and has its principal place of business in Nevada. *See* Dkt. No. 33 at 2. And they allege that TMM is an LLC whose sole member, Ryan Carter, is a citizen of California. *See id.*

And, so, Plaintiffs have alleged complete diversity among the parties.

As to the amount in controversy, the general rule is that each plaintiff invoking diversity jurisdiction must allege damages that exceed $75,000. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1330 (5th Cir. 1995).

Here, Cartwright alleges damages of at least $500,000, and Hall and Hennessy each allege damages of at least $100,000. *See* Dkt. No. 33 at 13. Each plaintiff has satisfied the required amount in controversy.

And, so, the Court has subject matter jurisdiction over this case.

**B. Personal Jurisdiction**

A judgment "without personal jurisdiction is void," and a "district court has the duty to ensure it has the power to enter a valid default judgment." *Sys. Pipe & Supply*,

242 F.3d at 324.

"[T]he Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Two types of personal jurisdiction may be exercised over a nonresident defendant: general and specific.

"General jurisdiction 'requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (quoting *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)).

> In evaluating whether due process permits the exercise of specific jurisdiction, [courts in this circuit] consider
>
> > (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
>
> If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth*

*v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); footnote omitted).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), then *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting, in turn, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))).

"In other words, for specific personal jurisdiction to exist over [a nonresident defendant], there must be an affiliation between the forum and the underlying controversy." *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 794 (5th Cir. 2024) (cleaned up; quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)).

This "constitutional touchstone" "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 474, 475 (cleaned up).

"That is, the plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 924 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "Rather, jurisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284 (quoting, in turn, *Burger King*, 471 U.S. at 475)).

Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must

-10-

establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Seiferth*, 472 F.3d at 274).

Plaintiffs do not allege any continuous and systematic contact with Texas by TONE that would place TONE within the general jurisdiction of this Court.

They instead rely on an agency theory to establish specific jurisdiction over TONE. *See Alliantgroup, L.P. v. Feingold*, CIV. A. H-09-0479, 2009 WL 2498551, at *6 (S.D. Tex. Aug. 12, 2009) (citing cases holding that an agent's jurisdiction contacts may be imputed to the principal).

> "The actions of an agent may establish minimum contacts over a principal." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). "As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG*, 571 U.S. at 135 n.13 (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). Under Texas law, in order to prove agency, "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008). An agency relationship must be affirmatively established and not presumed. *See Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 677 (N.D. Tex. 1998).

*Horton v. SunPath, Ltd.*, No. 3:20-cv-1884-B-BH, 2021 WL 982344, at *4 (N.D. Tex. Feb. 16, 2021), *rec. adopted*, 2021 WL 977065 (N.D. Tex. Mar. 15 2021); *accord Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 768 (S.D. Tex. 2022).

Plaintiffs allege that

> TONE cloaked Vlad in indicia of authority [and] told Plaintiffs to deal directly with him. In the course and scope of its business, [TONE] and [their] officers adopted Vlad, a fraudulent actor, as their representative and allowed him to act on their behalf. As their agent, Vlad made fraudulent representations about his age, expertise, net worth, previous

work, and the value of TONE's cryptocurrency to convince Plaintiffs to invest $80,000 in a cryptocurrency he knew was going to be worthless. Because Vlad operated as their agent, [TONE] are also responsible for Vlad's actions in the scope of his work for TONE.

Dkt. No. 33 at 5.

They allege that Vlad told Hall "that he was seeking an investment in an initial coin offering on behalf of TONE and that he could set up a call with Tom Webster, [TK]'s CEO, and Ryan Carter, [TMM]'s CEO, to discuss the technology and confirm Vlad's credentials. Believing in his vision, Mr. Hall invested $20,000 and invited Mr. Cartwright and Mr. Hennessy to speak with Vlad and Ryan Carter." *Id.* at 3.

Plaintiffs also allege that Carter, the sole member of TMM, and Vlad "were on a call with Mr. Hall and Mr. Cartwright and confirmed that what Vlad said was correct. $TONE coin was being created by Vlad and would have [TK]'s and [TMM]'s full backing. After this meeting, Mr. Cartwright invested $20,000 of their cryptocurrency assets…." *Id.*

And they allege that, "on a video call with Plaintiffs and Vlad, Mr. Webster, CEO of [TK], confirmed that $TONE coin had been created, and made numerous representations about the value of $TONE coin, the significant number [of] potential investors who were coming on board … and reaffirmed the uses of the coin within TONE's existing systems and infrastructure. Both TONE and Vlad made representations that the value of $TONE coin within the next few months would be worth in excess of $2 million. Based on this meeting, Mr. Cartwright invested another $20,000 worth of his cryptocurrency holdings, and Mr. Hennessy invested $20,000

worth of his cryptocurrency holdings…." *Id.* at 3-4.

Based on the facts in the Second Amended Complaint, the undersigned finds that TONE has an agency relationship with Carter, Webster, and Vlad. All three Plaintiffs invested in $TONE coin after Carter, Webster, and Vlad made claims about its value. *See Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-cv-00121-JCB-KNM, 2022 WL 17546957, at *5 (E.D. Tex. Oct. 20, 2022) (finding that plaintiff's allegation that "he purchased a vehicle warranty from [the defendant] as the result of a call received from either [the defendant] or from a third party at [the defendant's] direction" was sufficient for the purpose of a *prima facie* case "to allow the Court to infer that implied actual authority exists between Palmer, the purported principal, and Vehicle Services, the purported agent." (citing *Horton v. Palmer Admin. Servs., Inc.*, No. 3:20-cv-3526-X-BN, 2021 WL 8014654, at *6 (N.D. Tex. June 8, 2021)), *rec. adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022))).

But, notwithstanding the principal-agent relationship between TONE and Carter, Webster, and Vlad, the undersigned finds that the Court cannot exercise personal jurisdiction over TONE.

"For causes of action which sound in contract, including breach of contract and quantum meruit, 'only those acts which relate to the formation of the contract and the subsequent breach are relevant' to the minimum contacts test." *Rhodes v. Bank of Am., N.A.*, No. EP-20-cv-281-KC, 2021 WL 3549160, at *2 (W.D. Tex. Feb. 10, 2021) (quoting *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018)) (cleaned up).

-13-

The complaint alleges that "[e]ach Plaintiff entered into a written Investor Agreement" to receive $TONE coin. Dkt. No. 33. But Plaintiffs do not specify in which state the contract was executed or breached. They do not even allege that Plaintiffs were in Texas when any of their communications with TONE occurred.

Without an allegation that some part of the contract's formation or breach occurred in Texas, the undersigned cannot find that the Court may assert jurisdiction over TONE for the contract claims. *See Trois*, 882 F.3d at 489 ("The only alleged Texas contacts related to contract formation or breach are Schnaidt's conference calls negotiating the agreement while Trois was in Texas. But, standing alone, that is insufficient purposeful availment to establish jurisdiction over this breach-of-contract claim." (citing *McFadin*, 587 F.3d at 760; *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986))).

As to the fraud claims, "the minimum-contacts test for personal jurisdiction in [tort] differs from that in contract. 'A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.' 'The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation.'" *Id.* at 490 (quoting *Walden*, 571 U.S. at 286) (cleaned up).

"In cases alleging the intentional tort of fraud, the defendant's participation in a single telephone call is enough to establish personal jurisdiction if the content of the call gave rise to the fraud claim." *FCA Invs. Co. v. Baycorp Holdings, Ltd.*, No. 01-20717, 2002 WL 31049442, at *2 (5th Cir. Aug. 29, 2002).

Plaintiffs' fraudulent misrepresentation and securities fraud claims against TONE arise out of the calls between TONE's agents and Plaintiffs, who are citizens of Texas.

But Plaintiffs do not allege any connection between TONE and Texas other than Plaintiffs' Texas residence. For instance, they do not allege that any party was present in Texas when the calls and meetings between them and TONE occurred. *See Gem Sw. LLC v. Topy Enters., Ltd.*, No. 3:24-cv-1899-D, 2024 WL 4448683, at *5 (N.D. Tex. Oct. 8, 2024) ("Gem's allegations are insufficient to make a *prima facie* showing that Topy Enterprises had sufficient tort-related contacts with Texas to support specific jurisdiction. Gem alleges that Topy Enterprises made fraudulent misrepresentations to induce Gem, a Texas company, to enter into a contract with it. But Gem alleges no facts that connect Topy Enterprises' alleged tortious acts to Texas beyond their being directed at a Texas resident. Gem does not allege, for example, that the fraudulent misrepresentations were sent to, or received, in Texas.") (collecting cases).

Because Plaintiffs do not allege that TONE "directed" any communications "to Texas" or to Plaintiffs "in Texas," the undersigned finds that the Court lacks jurisdiction over TONE. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).

And, so, the undersigned finds that Plaintiffs have not made a prima facie showing of the personal jurisdiction over TONE as to Plaintiffs' breach of contract, quantum meruit, fraudulent representation, and securities fraud claims.

Because the Court lacks jurisdiction to enter a default judgment against TONE,

the undersigned need not address the merits of Plaintiffs' claims.

## Recommendation

The Court should deny Plaintiffs' Motion for Default Judgment [Dkt. No. 52] and dismiss their claims against TONE without prejudice for lack of personal jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 3, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE